### KEESEE v. KEMP et al. (No. 2829.)

Court of Civil Appeals of Texas. Amarillo. May 11, 1927.

Rehearing Denied June 8, 1927.

1. Malicious prosecution ⟨Key⟩11 — Malicious prosecution of suit with intent to enforce payment of debt held not ground of action for damages.

In action on notes and check for price of automobile and for foreclosure of chattel mortgage, defendant's allegations that plaintiffs had brought suit maliciously and with intent to injure and force him to pay a debt which he did not owe *held* not ground for cross-action praying for actual and exemplary damages.

2. Malicious prosecution ⟨Key⟩11—Generally, damages for prosecution of civil suits cannot be recovered unless party sued has suffered either in person or property.

Generally, damages for prosecution of civil suits, even if malicious and without probable cause, cannot be recovered unless party sued has suffered from interference, because of suits, with his person or property.

3. Contracts ⟨Key⟩94(3)—Generally, no intention to deceive or mislead need be shown to warrant rescission of contract.

Generally, no corrupt or sinister intention to deceive or mislead need be shown to warrant rescission of the contract; motive or cause actuating the parties making the representations not being material.

4. Contracts ⟨Key⟩94(3)—Intention that another should rely on representations being shown, with falsity and reliance thereon, warrants rescission without proof of fraud.

An intention that the other party should rely and act on representations being shown, together with actual falsity thereof and reliance thereon, makes out a case for rescission without proof of fraudulent design to deceive.

Appeal from Donley County Court; J. R. Porter, Judge.

Suit by G. G. Kemp and others, doing business under the firm name of Clarendon Motor Company, against G. P. Keesee. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Curtis E. Thompson, of Clarendon, for appellant.

Chas. H. Dean, Jr., of Clarendon, for appellees.

HALL, C. J. This suit was filed by G. G. Kemp and his partners, doing business under the firm name of Clarendon Motor Company, against the appellant, Keesee, upon a promissory note, payable in installments, and a check for $50, which it is alleged Keesee had given the appellees in payment for a secondhand Ford automobile. The prayer is for judgment for their debt and attorney's fees, and a foreclosure of a chattel mortgage lien which was given upon the automobile, at the time of the purchase, to secure the payment of the debt.

[1, 2] The defendant Keesee answered, setting up fraud and misrepresentation inducing him to purchase, and prayed for rescission of the sale and cancellation of the instruments sued upon. The trial court sustained a general demurrer to the answer and rendered judgment for the plaintiffs as prayed for. From such judgment this appeal is prosecuted. In his answer, Keesee by cross-action alleged that the plaintiffs had maliciously, and with the intent to injure and force him to pay a debt which he did not owe, filed this suit, and prayed for actual damages in the sum of $90 and exemplary damages in the sum of $500.

In so far as the cross-action is concerned, the court did not err in sustaining the general demurrer. The general rule is that damages for the prosecution of civil suits, even with malice and without probable cause, cannot be recovered unless the party sued has suffered from interference, by reason of the suits, with his person or property. Pye v. Cardwell, 110 Tex. 572, 222 S. W. 153; Id. (Tex. Civ. App.) 224 S. W. 543; McCaskill v. Clay (Tex. Civ. App.) 284 S. W. 643.

In defense the appellant alleged that he is not liable upon the note and the check executed in payment for the automobile because of the fraud practiced by the plaintiffs upon him in securing his signature to said instru-

ments and the mortgage; that the plaintiffs were dealing in new and secondhand Fords, and on the date of his purchase and prior thereto had, both by their advertisements in the newspapers and upon bulletin boards and by false representations made by themselves and agents, asserted that all of the secondhand Ford cars sold by them had been reconditioned and were in first-class shape; that, relying upon such statements, he applied to plaintiffs' agent and salesman to purchase such a car, and asked said salesman whether or not plaintiffs guaranteed their used Fords to be in every respect first-class and reconditioned, and, upon being informed that the plaintiff did guarantee used cars sold by them in such manner, he entered into negotiations with the salesman for the purchase of the car described in the plaintiffs' pleadings; that said salesman then and there informed him that the motor in said car had been reworked and was in first-class condition, having been reconditioned and reworked throughout; that he believed the representations of said salesman to be true, and, relying thereon, did not try out the car and told said salesman that he was relying upon said representations and the plaintiffs' guaranty, and before signing the mortgage and giving the note and check in question, he asked another agent of the plaintiffs concerning plaintiffs' guaranty of used cars sold by them, and was then and there informed that said guaranty did go with all used cars, that is, that they had been fully reconditioned by plaintiffs, if such reconditioning were necessary, and that the car was in first-class condition in every respect; that relying upon such representations he executed the note, mortgage, and check sued upon and had no notice whatever at that time that said automobile was other than as plaintiffs' agents had represented the same to be. He further alleged that he immediately drove the car about six miles, and that no sooner had the motor warmed up than it "developed a knock"; that the next day he drove the automobile a short distance and on that trip found that the pistons were worn and leaking, that the connecting rod bearings were worn and loose and knocking, that the motor would not pull for lack of compression in the cylinders, and that the car was in truth and in fact a wreck and wholly worthless; that it had not been reworked and reconditioned and was not in first-class shape as the plaintiffs' agents had represented the same to be; that on finding out that the car was totally worthless and a wreck and not what plaintiffs' agents had represented it to be, he returned it to plaintiffs, stopped payment of his check, and demanded that plaintiffs return him the note sued on, together with the mortgage; that plaintiffs' head mechanic then and there told defendant that said car had not been reworked and reconditioned, and then and there told him that the market value of the motor in said car was $6. He further alleges in the sixth paragraph as follows:

"That the representations that the car had been reworked and that it was in first-class condition, made by the plaintiffs' agent, Marion Zachary, were false and untrue, and that this defendant is not informed whether they were purposely or innocently made, and that defendant, G. P. Keesee, would not have executed the note and mortgage and given the check but for such representations; and whether innocently or purposely made, in law they constitute a fraud on this defendant, G. P. Keesee, and that immediately on discovery of such fraud he rescinded the contract as in law he had a right to do, and that he returned to the plaintiffs the automobile purchased from them just as soon as he found out that the same was not what it was represented to be and rescinded the contract."

[3, 4] This part of the answer was verified by the appellant. It appears from the record that the trial judge sustained the general demurrer upon the ground that appellant did not allege that the misrepresentations as to the condition of the car had been fraudulently made, and with the fraudulent intent to deceive the appellant. While in some jurisdictions, scienter and fraudulent intent upon the part of one making misrepresentations must be alleged and shown to entitle the defrauded party to rescind, this is not the rule in Texas. The general rule which obtains in this state, is that no corrupt or sinister intention to deceive or mislead need be shown in order to warrant the rescission of the contract. The motive or cause which actuated the parties making the representations is not material. If any intention on his part is to be shown, it is the intention that the other party should rely and act upon the representations and not an intention to deceive him. This being shown, together with the actual falsity of the representations, and such party's reliance on them, a case for rescission is made out without proof of any fraudulent design to deceive. Cole v. Carter, 22 Tex. Civ. App. 457, 54 S. W. 914; Carter v. Cole (Tex. Civ. App.) 42 S. W. 369; Texas Cotton Products Co. v. Denny Bros. (Tex. Civ. App.) 78 S. W. 557; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 724; Id., 101 Tex. 473, 108 S. W. 1165; Roark v. Prideaux (Tex. Civ. App.) 284 S. W. 624; White v. Carlton (Tex. Civ. App.) 277 S. W. 701; Spencer v. Womack (Tex. Civ. App.) 274 S. W. 175; Johnson v. Cole (Tex. Civ. App.) 258 S. W. 850; Halff Co. v. Jones (Tex. Civ. App.) 169 S. W. 906; Evans v. Hartman (Tex. Civ. App.) 286 S. W. 327; Simkins on Contracts and Sales, 963, 968; Simkins on Equity, 533, 534.

For the error indicated, the judgment is reversed and the cause remanded.