In re James E. HEARN, Jr., Debtor.

J. Baxter SCHILLING,
Trustee, Plaintiff,

v.

ELECTRONIC REALTY ASSOCIATES,
INC., Defendant.

Bankruptcy No. 3-84-00375.
Adv. No. 3-84-0079(B).

United States Bankruptcy Court,
W.D. Kentucky.

April 12, 1985.

Thomas A. Frentz, Louisville, Ky., for trustee.

James Higgin, Louisville, Ky., for debtor.

A. Frank Gallegos, Minneapolis, Minn., and Jefferey Anderson, Louisville, Ky., for defendant.

## MEMORANDUM—OPINION ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on cross Motions for Summary Judgment filed by the Trustee as Plaintiff, and the Defendant, each alleging that there is no issue of a material fact, and that each is accordingly entitled to judgment as a matter of law.

This proceeding was initiated by the Trustee seeking to recover an alleged preference under 11 U.S.C. § 547. The debtor has filed an Answer denying that the property which the Trustee here seeks to recover was property of the estate and subject to the powers vested in the Trustee pursuant to Section 547. Thereafter discovery proceedings were taken and the case submitted on the cross Motions for Summary Judgment denoted.

The facts relating to the issues presented are briefly summarized as follows. The debtor, James E. Hearn, Sr., (Hearn, Sr.) was indebted to the defendant, Electronic Realty Associates (ERA), for the sum of approximately $11,000.00, which sum represented an accrued indebtedness resulting from a franchising agreement between these parties. Shortly before the filing of the debtor's petition, the parties reached an agreement whereby the total indebtedness would be deemed paid in full upon receipt by ERA of the sum of $3,000.00. This negotiated settlement amount was due and payable January 11, 1984. On January 3, 1984, the debtor sold to a third party an item of business equipment for the sum of $3,000.00. This property was unencumbered and payment by check was made therefor to the debtor on January 3, 1984. On January 4, 1984, the check was presented and deposited to the bank by the debtor, with his endorsement thereon, but the bank refused to release funds pursuant to this deposit until such time as this check had cleared normal banking channels.

On or about January 11, 1984, and without available funds to finalize the settlement with ERA due to non-clearance of the January 4, 1984 deposit, the debtor made arrangements with his mother to advance $3,000.00 to consummate the ERA settlement. Repayment would be accomplished by reimbursing his mother $3,000.00 once the January 4, 1984 deposit funds were available.

Debtor's mother withdrew $2,550.00 from her personal bank account under a Cashier Check, payable to herself, endorsed same without qualification, and delivered it to the debtor together with $450.00 cash. Debtor took the check and cash to ERA's attorney the same day and neither the check nor cash passed through the debtor's bank account. Upon release of the sale proceeds on or about January 20, 1984, debtor delivered the $3,000.00 to his mother to cover the $3,000.00 previously advanced by her for the stated purpose.

At issue is whether the unqualified endorsement and delivery of the Cashier Check and cash to debtor caused such assets to become property of his estate.

■ It is unquestioned both Hearn, Sr. and his mother specifically intended her $3,000.00 be paid ERA, and repayment would be derived from the sale proceeds, once released. The Trustee insists that delivery of the endorsed Cashier Check and cash to the debtor constituted such absolute control in the debtor as to cause these assets to become property of the estate, notwithstanding the admitted intentions of the parties. In support thereof, he cites *Matter of Villars*, 35 B.R. 868 (Bkrtcy.S.D. Ohio, 1983) which rejected the theory that "earmarked funds" precludes such from becoming property of the estate as a dispositive rule. Rather the court in *Villars* properly looked to the underlying facts to determine the issue and was not estopped from such inquiry merely because the funds had been "earmarked". There, the check was payable jointly to Villars and another payee, was endorsed by Villars, and was deposited in the joint payee's bank account. The *Villars* court noted: "The distinction is apparent between such control over his property and the situation where the funds are held in irrevocable trust or in custodia legis...."

The Trustee urges the present fact situation is analogous to *Villars* in that Hearn, Sr., upon receiving possession of the check and cash, *could* have diverted same from their intended purpose and such *right of control* causes same to become property of the estate. (Emphasis added). These assets, however, were not specifically payable to Hearn, Sr., were not deposited into his or the company bank account, the check was not endorsed by him prior to presentation to ERA, and were in every respect handled in strict accordance with the parties intent. It must be noted, at no time did the debtor exercise or manifest any control adverse to the expressed purpose of the agreement. No overt act was taken to occasion these funds becoming part of the estate. Had the debtor exercised the de-

gree of control the Trustee suggests was possible, and which the Trustee maintains justifies deeming these funds property of the estate, his actions would have been violative of the express terms and conditions upon which the arrangement was. based. Such speculation of an improper application of funds to justify defining what is property of the estate will not be condoned. The opportunity to exercise improper control is not synonymous with the exercise thereof, and sufficient to create an interest of debtor's estate thereto.

■ The Trustee correctly sets forth the five elements which must be present for the transfer to be deemed preferential under 11 U.S.C. § 547. Paramount among these, is that the transfer was property of the estate, and said transfer diminished the estate to the detriment of other creditors in the same class.

Trustee seeks to justify his theory by resort to *National Bank v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912) wherein Justice Hughes states: "If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it...". Ironically, however, it is the Trustee, who resorts to the rankest circuity of speculation and possibilities to support his position that these funds were at any point in time property of the estate.

The Court believes from the stipulated facts and issues presented that the Trustee has failed to sustain the burden of proving the essential elements necessary to justify the relief requested. There is no question the estate was diminished by the sale of unencumbered property; that these sale proceeds were ultimately paid to an antecedent debt; and the outward appearances of a preferential transfer exist. However, said preference payment was, if established, that made to Hearn, Sr.'s mother and not that made to ERA.

The relationship sought to be achieved by the debtor and his mother, in order to avail the settlement benefit with ERA was a novation. It has been found that intent is the essential element in proving a novation. See *Cantrill Construction Company v. Carter*, 418 F.2d 705 (6th Cir.1969). Further, *Truscon Steel Co. v. Thirwell Elec. Co.*, 265 Ky. 414, 96 S.W.2d 1023 (1936) elaborates by stating that a "novation is the substitution of a new obligation for an old one *with the intent to extinguish the old one*, or the substitution of a new debtor for an old one, *with the intent to release the latter*, or the substitution of a new creditor, *with the intent to transfer the rights of the old one to him.*" (Emphasis added). *Id.* at 417, 96 S.W.2d at 1025. This is precisely what was attempted to be achieved. While the subsequent bankruptcy petition by the debtor results in a harsh and perhaps unanticipated result to the new creditor (Hearn, Sr.'s mother), this novation did occasion a distinct benefit to the debtor who was thereby able to reduce ERA's claim to the settlement sum. While no tangible benefit accrued to the new creditor, the "insider" status existing between the old debtor and the new creditor must be viewed as a filial accomodation since no prudent lender would have assumed this position without adequate security to cover the attendant risk. Additionally, the loan was accomplished without formal execution of documents and without interest being provided. This informality is further illustrated by the debtor's role as "courier" in delivering the cash and Cashier Check (without his endorsement) to ERA. Subsequent events which impelled the bankruptcy petition negated the settlement benefits to the debtor and exposed the "new Creditor" to the attendant risks of an ill advised financial adventure, with its resultant legal consequences.

The above constitutes findings of fact and conclusion of law pursuant to Rules of Bankruptcy Procedure 7052.

Accordingly, the Motion for Summary Judgment of the Trustee-Plaintiff be and it is hereby overruled. Motion for Summary Judgment of the defendant, Electronic Re-

alty Associates, Inc., be and it is hereby sustained, and the Trustee's Complaint is dismissed.

This is a final Order and there is no just cause for delay.