**TEXAS FARM BUREAU COTTON ASS'N v. CRADDOCK et al. (No. 3256.)**

(Court of Civil Appeals of Texas. Texarkana. June 10, 1926. Rehearing Denied June 17, 1926.)

**1. Fraud ⚯11(1).**

Statement to growers by co-operative marketing association's agent that expense of handling cotton would not exceed $2 per bale *held* mere expression of opinion.

**2. Fraud ⚯11(1).**

Assertion that thing will happen in future is statement of opinion, not of fact.

**3. Fraud ⚯11(1).**

Fraud may be predicated on expression of opinion by one falsely pretending to entertain it for purpose of deceiving another.

**4. Appeal and error ⚯931(4)—In absence of evidence that plaintiff marketing association's agent did not entertain opinion expressed as to cost of handling cotton, appellate court cannot assume that trial court so found in support of judgment for defendant growers (Vernon's Sayles' Ann. Civ. St. 1914, art. 1985).**

In absence of evidence that plaintiff co-operative marketing association's agent did not really entertain opinion expressed that cost of handling growers' cotton would not exceed $2 per bale, appellate court cannot assume, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, in support of judgment for defendant growers, that trial court so found.

**5. Fraud ⚯11(1).**

Fraud may be predicated on statement, made, not as mere expression of opinion, but as existing fact material to transaction.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Suit by the Texas Farm Bureau Cotton Association against J. F. Craddock and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Appellant is a nonprofit association, incorporated by authority of the Act March 1, 1921, known as the "Co-operative Marketing Act" (General Laws 1921, p. 45 [Vernon's Ann. Civ. St. Supp. 1922, arts. 14½k–14½yy]; R. S. 1925, arts. 5737 to 5764), "to promote, foster and encourage the business of marketing cotton co-operatively; to minimize speculation and waste in the production and marketing of cotton and cotton products; to stabilize cotton markets; to handle collectively the problems of cotton growers"; and for other purposes. Its suit against appellees was for damages and to enforce a contract in writing, dated June 29, 1921, whereby, it alleged, appellees agreed to sell and deliver to it "all of the cotton produced or acquired by or for them in Texas during the years 1921, 1922, 1923, 1924 and 1925," and whereby appellant agreed to "resell such cotton together with cotton of like variety, grade and staple delivered by other growers under similar contracts at the best prices obtainable by it under marketing conditions; and to pay over the net amount received therefrom (less freight, insurance and interest), as payment in full to the grower and growers named in contracts similar hereto, according to the cotton delivered by each of them, after deducting therefrom, within the discretion of the association, the costs of

maintaining the association, organization fee and annual membership dues to the Texas Farm Bureau Federation (unless otherwise paid) and costs of handling, grading and marketing such cotton; and of reserves for credits and other general purposes (said reserves not to exceed 1 per cent. of the gross resale price). The annual surplus from such deductions must be prorated among the growers delivering cotton in that year on the basis of deliveries."

The other terms and conditions of the contract were also identically the same as those in the contract set out in full in Texas Farm Bureau Cotton Association v. Stovall, 113 Tex. 273, 253 S. W. 1101.

In their answer appellees asserted that the contract was not binding upon them because, they charged, they were induced to execute it by representations made to them by one Dickey, appellant's agent, which they believed to be true and relied upon, but which, they alleged, were in fact false and fraudulent. Among the representations, they charged, was one that "the expense of handling the cotton in no event would exceed $2 per bale," whereas, they alleged, such expense "was as much as $10 per bale."

On special issues submitted to them the jury found that appellant's said agent made the representation specified, and that appellees relied upon it as true, otherwise they would not have executed the contract. The appeal is from a judgment that appellant "take nothing by reason of its suit and that specific performance be denied."

O. K. Bullard, of Dallas, V. B. Harris, of Quitman, and Aaron Sapiro, of Chicago, Ill., for appellant.

W. D. Suiter and H. L. Wilkinson, both of Winnsboro, for appellees.

WILLSON, C. J. (after stating the facts as above). [1, 2] Appellant insists the statement the jury found its agent made to appellees to induce them to execute the contract, to wit, that the expense of handling the cotton would not exceed $2 per bale, was an expression of opinion merely, and not a representation as to an existing fact. Therefore, it says, proof that the expense of handling the cotton exceeded $2 a bale did not warrant the judgment rendered, determining (as it did in effect) that because of fraud of its agent the contract was not binding on appellees.

According to the testimony of appellee C. B. Craddock as a witness, the statement of appellant's agent, Dickey, with reference to the expense of handling the cotton, on which the finding of the jury was based, was that he (Dickey) "thought it would be $1 a bale, but in no event would it exceed $2 a bale." According to the testimony of J. F. Craddock, the other appellee, Dickey's statement was that said expense "would not be over $2 a bale nor less than $1 a bale."

We think it is plain from the testimony referred to that the statement on which the jury predicated their finding in form was no more than an expression of the agent's opinion as to what would be the expense of handling the cotton; for an assertion that a thing will happen in the future necessarily is always a statement of an opinion and is never a statement of a fact. A thing must have happened before it can be a fact. Downes v. Self, 28 Tex. Civ. App. 356, 67 S. W. 897.

[3, 4] However, fraud may be predicated on a statement which purports to be only the expression of an opinion entertained, if the person expressing the opinion in reality does not entertain it, but falsely pretends he does for the purpose of deceiving another person. 12 R. C. L. 247 et seq.; 26 C. J. 1079 et seq.; Simkins on Equity, 531. Hence this court would have to assume in support of the judgment, if there was testimony authorizing it, that the trial court found the agent did not in fact entertain the opinion he expressed. Article 1985, Vernon's Statutes. But there seems to be no such testimony in the record sent to this court. On the contrary, the testimony in that record indicates that the agent honestly entertained the opinion he expressed.

[5] And so fraud may be predicated upon a statement which otherwise would not be treated as actionable, where the party making it "does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction so that the other party may reasonably treat it as a fact and rely and act upon it as such." 2 Pomeroy's Eq. Jur. § 878. We do not think this is that kind of a case. The statement of appellant's agent in question was made pending and in contemplation of the organization of the appellant association, before cotton of any of its members had been handled under its plan, and when the cost of such handling necessarily was conjectural —a fact which in the nature of things necessarily must have been known to appellees. As we construe the statement, as testified to by appellees, it was not, and under the circumstances of the case reasonably could not have been, understood by appellees to be an assertion as to an existing fact, but must have been understood by them as a mere expression by Dickey of his opinion as to the expense to be incurred in handling cotton under the contemplated plan.

The amount appellant is entitled to recover of appellees because of their breach of the contract does not appear in the record in such a way as to authorize us, after reversing the judgment of the court below, to here render judgment in appellant's favor. Therefore the cause will be remanded for another trial.