MERCHANDISE MART, INC., Appellant,

v.

Herman MARCUS, Appellee.

No. 627.

Court of Civil Appeals of Texas,
Tyler.

Aug. 3, 1972.

Rehearing Denied Aug. 31, 1972.

Atwell, Malouf, Musslewhite & Bynum, Arlen D. Bynum, Dan M. Cain, Dallas, for appellant.

Emil Corenbleth, Lawrence Fischman, Dallas, for appellee.

McKAY, Justice.

Appellant brought this suit on a written lease contract with appellee for premises in appellant's building known as Merchandise Mart in Dallas. The lease was dated January 28, 1964, and was for a term of nine years and five months from May 1, 1964, at the rental rate of $468.66 per month, and appellant alleged appellee breached the contract by vacating the premises and refusing to pay on the lease after December, 1964. Appellee answered by allegations of fraud and failure of consideration because appellant had represented to appellee that National Fashion Exhibitors of America (hereinafter called National) would have four market weeks per year for the showing of women's clothing in the building, and that National would remain in the building until September 30, 1973, and that these representations were false. Trial was before a jury, and judgment was rendered on the verdict [1] that appellant take nothing.

I. "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that at the time Defendant Herman Marcus executed the lease in question the plaintiff Merchandise Mart, Inc. knew the purpose for which he was leasing the premises?

"ANSWER 'It did' or 'It did not'

"ANSWER It did

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that Plaintiff Merchandise Mart, Inc. represented to Defendant Herman Marcus, at the time of his executing the lease in question, that the National Fashion Exhibitors Association would remain in its building until September 30, 1973?

"ANSWER 'It did' or 'It did not'

"ANSWER It did

"If you have answered the above issue 'it did' and only in that event, then answer:

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that Plaintiff Merchandise Mart, Inc. made such representations, if it did, with the intention that it be relied on by Defendant Herman Marcus?

"ANSWER 'It did' or 'It did not'

"ANSWER It did

"If you have answered the above issue 'it did' and only in that event, then answer:

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that Defendant Herman Marcus relied on such representation, if any, in executing the lease in question?

"ANSWER 'He did' or 'He did not'

"ANSWER He did

"SPECIAL ISSUE NO. 8

"Do you find from a preponderance of the evidence that Plaintiff Merchandise Mart, Inc. represented to Defendant Herman Marcus, at the time of executing the lease in question that at least four market weeks would be held each calendar year in Plaintiff's building under the auspices of National Fashion Exhibitors Association?

"ANSWER 'It did' or 'It did not.'

"ANSWER It did

"If you have answered the above issue 'it did' and only in that event, then answer:

"SPECIAL ISSUE NO. 9

"Do you find from a preponderance of the evidence that Plaintiff Merchandise Mart, Inc. made such representation, if it did, with the intent that Plaintiff Herman Marcus rely on same in executing the lease in question?

"ANSWER 'It did' or 'It did not.'

"ANSWER It did

Appellant contends in his Points 1 through 12 that the jury's answers to Issues 1 through 4 and Issues 8, 9 and 10 have no legal effect or bearing because (1) there was no inquiry whether any representations made by appellant were false; (2) no inquiry whether such statements or representations were matters of fact or matters of opinion; (3) representations concerning future events are not deemed fraudulent even though the event does not occur; (4) there was no inquiry as to whether the statements or representations were reasonably relied upon by appellee to his detriment and whether such representations or statements were of a material fact; (5) there was no inquiry as to whether an agent, servant or employee of appellant made any such alleged representations and was acting within the scope of his employment, and (6) they do not establish the necessary elements of fraud or misrepresentation.

"The essential elements of actionable fraud based on a false representation are a false statement of a material fact made to be acted on and actually believed and acted on with consequential injury to the person acting thereon." 25 Tex.Jur.2d, Fraud and Deceit, Sec. 13, p. 626. "In other words, the false affirmation of a material fact made for the purpose of inducing a bargain and actually accomplishing the purpose with resulting damage will constitute

ground for an action for fraud." Carruth v. Allen, 368 S.W.2d 672 (Tex.Civ.App., Austin, 1963, n. w. h.). Section 27.01, Business and Commerce Code, V.T.C.A., sets out these same elements as applying to fraud in real estate and stock transactions.

In establishing all of the elements of fraud a party is required to show (1) that his adversary made a representation; (2) that the representation was a past or present material fact; (3) that the representation was false at the time it was made; (4) that the representation was made with intent to induce a party to do or refrain from doing some act; (5) that the representation was relied upon by the party; and (6) that the party suffered damage or injury. 25 Tex.Jur.2d, Fraud and Deceit, Sec. 13, pp. 626-7; Rumfield v. Rumfield, 324 S.W.2d 304 (Tex.Civ.App., Amarillo, 1959, writ ref., n. r. e.).

National was an organization of apparel salesmen who displayed and showed their women's apparel at fashion shows arranged and promoted by National. Appellee had been a lessee and occupant of appellant's building for several years and during the period involved in this case appellee was an officer or director of National, and at the time National moved out of appellant's building appellee was Chairman of the Board of Directors of National. The lease in question here was execut-

"If you have answered the above issue 'it did' and only in that event, then answer:
"SPECIAL ISSUE NO. 10
"Do you find from a preponderance of the evidence that Defendant Herman Marcus relied on such representation, if any, in executing the lease in question?
"ANSWER 'He did' or 'He did not'
"ANSWER He did
"SPECIAL ISSUE NO. 11
"Do you find from a preponderance of the evidence that Defendant Herman Marcus leased the premises in question for the purpose of showing lines of ladies apparel to retail store buyers for resale at fashion markets to be held in the Merchandise Mart building?
"ANSWER 'He did' or 'He did not'
"ANSWER He did

"If you have answered the above issue 'he did' and only in that event, then answer:
"SPECIAL ISSUE NO. 12
"Do you find from a preponderance of the evidence that the premises in question leased by the Defendant Herman Marcus from Plaintiff Merchandise Mart, Inc. could no longer be used for the purpose of showing lines of ladies apparel to retail store buyers for resale at fashion markets to be held in the Merchandise Mart building after the October, 1964 market?
"ANSWER 'The premises could no longer be so used' or 'They could still be so used'
"ANSWER They could still be so used."

ed in January, 1964, and later in 1964, a new building in Dallas called the Apparel Mart was being completed. The Apparel Mart induced some of the occupants of Appellant's building to move to the Apparel Mart building and as an inducement offered to pay and did pay appellant for the remaining term of their leases. When these occupants moved, then National made a decision in December, 1964 to move to the Apparel Mart. The last market showing in appellant's building sponsored by National was in October, 1964, immediately after which 25 or 30 apparel tenants moved out en masse. Approximately 80 others had already moved before the last market showing. Appellee signed a lease with Apparel Mart effective January 1, 1965, and paid no rent to appellant after December, 1964.

It will be noted that the charge of the trial court did not contain any issues inquiring whether the representations alleged to have been made were of a material fact or facts or a material inducement, whether they were false at the time they were made, or whether the party relying on such representations did so to his detriment by suffering damages or injuries. It is also noted from appellee's pleading that he alleged no specific representation of a material fact which was false at the time it was made, or that he relied upon such representation to his detriment.

■ Failure by the party who urges fraud to have submitted an issue on an essential element of fraud or misrepresentation will result in a waiver of such issue. Since appellee had the burden to establish the essential elements of fraud, he should have obtained jury findings upon each of them, and not having requested such issues, he waived them. Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W. 2d 820 (1947); Johnson v. Miller, 142 Tex. 228, 177 S.W.2d 249 (1944). The party who has the burden of establishing an issue during the trial has the duty to request its submission in proper form. Walsh v.

Hershey, 472 S.W.2d 954 (Tex.Civ.App., Fort Worth, 1971, writ ref., n. r. e.). Appellee did not plead nor request issues on whether representations by appellant were untrue at the time they were made, known to be untrue by appellant, and that such representations were relied upon to the detriment of appellee.

■ Appellee contends that Rule 279, Texas Rules of Civil Procedure controls on this point in that appellant did not object to the failure to submit any issues, and such omitted issues are deemed found in support of the judgment. We do not agree. Appellant objected to the charge of the court because " * * * * said set of issues (No. 4) and Special Issues Nos. 2 and 3 do not state a legal ground for alleged misrepresentation as is called for under the existing case law of this State." Since appellant did object for failure to submit all of the issues on elements of fraud, these issues are not deemed to be found by the court in support of the judgment. Friedman v. Powell Electrical Manufacturing Co., 456 S.W.2d 758 (Tex.Civ. App., Houston 1st, 1970, n. w. h.); Praetorian Mutual Life Insurance Company v. Sherman, 455 S.W.2d 201 (Tex.Sup., 1970).

Appellee also relied upon El Paso Hilton Hotel Company v. Peyton, 47 S.W.2d 395 (Tex.Civ.App., El Paso, 1932, writ dis.), and Miller v. Latham, 276 S.W.2d 858 (Tex.Civ.App., Amarillo, 1954, writ ref., n. r. e.), to show the elements of misrepresentation which will allow a party to void a landlord and tenant lease. An examination of the El Paso Hilton case reveals the trial court there in addition to other fraud issues submitted issues to the jury inquiring (1) whether the representation was false, (2) whether it was made to induce the lessee to execute the lease, and (3) whether such representation was a material inducement to lessee to enter into the lease. In the Miller case the trial court also inquired of the jury whether lessor's representation was a material inducement to lessee to sign the lease as well as asking whether such

representation was false. The jury in Miller was also asked whether the representation was made as a statement of fact. We are of the opinion that these cases do not support appellee's contention.

Appellant also contends that representations concerning future events are not deemed fraudulent even though the event does not occur unless such representations are susceptible to actual knowledge. In 25 Tex.Jur.2d, Fraud and Deceit, Sec. 42, p. 679 is this statement: "A representation must ordinarily concern a past or existing fact in order to be actionable; representations as to future or contingent events are in general not to be deemed fraudulent though the prophesied fact does not occur." In Talley v. Howsley, 142 Tex. 81, 176 S. W.2d 158 (1944), is found this statement: "Moreover, it has been many times decided in this state that the failure to discharge a promise of something to be done in the future is not fraud."

We quote from Mangum Road Center v. DiSclafani, 450 S.W.2d 130 (Tex.Civ.App., Houston 14th, 1969, writ ref., n. r. e.):

"To say that something will occur in the future usually means only that the speaker is of the opinion that it will so occur and is a statement of an existing fact only that it implies the existence of such opinion in the speaker's mind. Its truth or falsity can be determined only by inquiry into the statement of the mind of the speaker. Harris v. Sanderson, Tex. Civ.App., 178 S.W.2d 315, writ ref., w. o. m.; Texas Farm Bureau Cotton Ass'n v. Craddock, Tex.Civ.App., 285 S.W. 949, writ ref.

\*　\*　\*　\*　\*　\*

"Thus, proof of fraud in the making of a statement as an existing or past objective fact does not require proof of the speaker's mental state as it relates to belief in the truth of the matter of the statement made. But where the statement relates to something that is to occur in the future, proof of the state of the mind of the speaker is necessary in order to establish the falsity of the statement. In such case it must be proved that the speaker did not have the intention, belief or opinion that he said he had.

"It should be noted, of course, that there are some statements of opinion, made in connection with business transactions, that do not constitute actionable fraud regardless of the state of the mind of the speaker. \* \* \*."

■ The record before us indicates both appellant and appellee had the same information concerning whether National would remain in appellant's building or whether there would be four fashion shows annually sponsored by National. National had a written agreement with appellant to remain in appellant's building until 1973, and, no doubt, any representation made by appellant to appellee was based upon National's contractual obligation. Any representation made by appellant to appellee was not what appellant could or would do in the future but what National was legally obligated to do. Appellant had no control over National, and National could breach the contract if it chose to do so and move out at its own discretion and at its own peril. Appellant's representation could, under these circumstances, be only a belief or opinion of what National would do in the future. We do not believe the elements of fraud have been shown.

■ Appellant's Points 1 through 12 are sustained. We deem it unnecessary to discuss appellant's other points except to point out that by Issue 12 the jury found the premises appellee had occupied could still be used for the purpose of showing apparel to retail buyers, and that was the purpose for which the premises were leased as expressed in the written contract. There was no failure of consideration shown.

We do not believe that the agreement between appellant and National is or should be considered a part of appellant's

agreement with appellee on the leased premises. Therefore, we are of the opinion there is no anti-trust question in the case as claimed by appellee.

The judgment of the trial court is reversed and judgment is here rendered for appellant.